UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION
No. 1:22-CV-11398-WGY

RODERICK WEBBER,
      Plaintiff
v.

BOSTON POLICE DEPARTMENT,
THE CITY OF BOSTON,
MAYOR MARTY WALSH,
OFFICER MICHAEL C. HARRINGTON,
OFFICER KENNETH FONG,
OFFICER RYAN DANIEL O'LEARY,
OFFICER JAMES WALSH,
OFFICER JOHN DANILECKI,
JOHN DOE 1,
JOHN DOE 2,
JOHN DOE 3,
JOHN DOE 4,
JANE DOE 1,
JUDGE RICHARD SINNOTT,
BOSTON MUNICIPAL COURT,
COMMONWEALTH OF
MASSACHUSETTS,
      Defendants

**MEMORANDUM OF LAW IN SUPPORT OF JOHN DANILECKI MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

I.    INTRODUCTION

Now comes the Defendant, Police Captain John Danilecki ("Danilecki"), and hereby moves

this Court, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss all of *pro se* Plaintiff, Roderick

Webber's ("Plaintiff"), claims against him. As grounds, Danilecki states that: (1) Plaintiff's

1

negligence tort claims against Danilecki are barred by M.G.L. c. 258 § 10; (2) Plaintiff fails to plead sufficient facts sufficient to meet the *Twombly* pleading standard; and (3) Danilecki is entitled to qualified immunity.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

On August 30, 2022, Plaintiff filed a civil complaint against the Defendant Danilecki, among sixteen total defendants, alleging various state and federal claims.[1] On January 3, 2023, the Court ordered Plaintiff to file a more definite statement.[2] On February 15, 2023, Plaintiff filed a "more definite statement" attaching an Amended Complaint.[3] On February 16, 2023, Plaintiff followed up with a second and separate "more definite statement."[4] The essential claims in these two documents appear to be the same, so while Defendant Danilecki responds in this motion to the properly filed more definite statement, all arguments apply to the proposed Amended Complaint as well.[5]

Plaintiff's Amended Complaint discusses many background issues of import to Plaintiff, but not relevant to the claims against the named Defendants. The relevant allegations are as follows:[6] On August 31, 2019, Plaintiff attended a "Straight Pride" rally as a documentarian.[7] Prior to this rally, Plaintiff states that he had attempted to contact the office of Mayor Marty Walsh to "alert the Mayor to the dangerous and terroristic activities" that the group involved in the rally had been engaged in.[8] As the rally was winding down, Plaintiff claims that members of the Boston

---

[1] ECF 1.
[2] ECF 27.
[3] ECF 28.
[4] ECF 29.
[5] Plaintiff notes Defendant's assent to several points in his filings. Defendant only assented to Plaintiff's request for additional time to file a more definite statement.
[6] Defendant assumes for purposes of this motion only that facts stated in Plaintiff's Complaint are true.
[7] ECF 28, ¶ 19.
[8] ECF 28, ¶¶ 19, 20.

Police Department ("BPD") "indiscriminately" pepper-sprayed those who were protesting the rally, though he does not allege that he himself was pepper-sprayed.[9]

Near the intersection of State Street and Congress Street, Plaintiff observed members of BPD form a line.[10] Plaintiff states that he used a megaphone to ask the officers whether there was a "dispersal order" given, at which point BPD officers "charged at the crowd."[11] Officer Michael Harrington grabbed Plaintiff from behind and forced him to the ground.[12] Officer Ryan O'Leary, Officer James Walsh, and an unnamed third officer assisted Officer Harrington.[13] Plaintiff claims to have suffered an injury to his right leg and told police he was injured.[14]

Officer John Danilecki shouted at other individuals, one of whom was Plaintiff's friend Vermin Supreme, to "move back or we will deploy mace."[15] Plaintiff states, without factual support, that Danilecki "began working to give cover for the crimes of HARRINGTON, O'LEARY, WALSH" and the unidentified officer.[16]

Plaintiff was brought to a police transport vehicle "hobbling in agony" and was transported with other arrested protesters.[17] Another individual fell during this transport and appeared to injure his wrists.[18]

---

[9] ECF 28, ¶ 21
[10] ECF 28, ¶ 24.
[11] ECF 28, ¶ 24.
[12] ECF 28, ¶ 25.
[13] ECF 28, ¶ 25.
[14] ECF 28, ¶¶ 25, 26.
[15] ECF 28, ¶ 27.
[16] ECF 28, ¶ 27
[17] ECF 28, ¶ 28.
[18] ECF 28, ¶ 28.

Plaintiff cites a police report authored by Officer Michael Harrington regarding this incident and states that this police report contains false statements about Plaintiff "inciting the crowd."[19] Plaintiff was charged with resisting arrest and disorderly person.[20]

When Plaintiff was brought to court, he wished to keep what Plaintiff claims to be a "religious covering" on his head, but was told to remove it by a court bailiff.[21] Plaintiff was ultimately not permitted to enter the courtroom with the "religious covering" and was placed in "lock-up in the basement."[22] Plaintiff was ultimately brought before Judge Richard Sinnott who refused to grant the District Attorney's Office's request to nolle pros the case against Plaintiff.[23] The charges were ultimately dismissed after an appeal.[24] Plaintiff states that he lost employment because of the "arrest[], court dates and media coverage."[25]

Defendant Danilecki moves to dismiss the Amended Complaint against him for the following reasons.

### III.   ARGUMENT

#### A. Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), a complaint "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To determine "whether a complaint states a plausible claim, [courts] 'perform [a] two-step analysis.'" *Saldivar v. Racine*, 818 F.3d 14, 18 (1st Cir. 2016), quoting *Cardigan Mtn. Sch. v.*

---

[19] ECF 28, ¶ 23; Exhibit A.
[20] ECF 28, ¶ 29.
[21] ECF 28, ¶ 31.
[22] ECF 28, ¶ 34.
[23] ECF 28, ¶ 36.
[24] ECF 28, ¶ 38.
[25] ECF 28, ¶ 39

4

*N.H. Ins. Co.*, 787 F.3d 82, 84 (1st Cir. 2015). "At the first step, we distinguish the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." *Id.* (internal quotation marks omitted). "At step two, we must determine whether the factual allegations are sufficient to support the reasonable inference that the defendant is liable." *Id.* (internal quotation marks omitted). The "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations are true . . . ." *Twombly*, 550 U.S. at 555. This standard is "not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678, *quoting Twombly,* 550 U.S. at 556. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. As discussed below, Plaintiff's claims against Defendant Danilecki should be dismissed for failing to meet the *Twombly* pleading requirements.

    **B.  Plaintiff's negligence claim(s) against Defendant Danilecki must be dismissed**

Plaintiff has sued Defendant Danilecki for negligence under Count 4. In the Commonwealth, negligence claims against municipalities related to the acts of its employees are governed by Massachusetts General Laws chapter 258, the Massachusetts Tort Claims Act ("MTCA"). The MTCA provides the exclusive remedy for injuries allegedly caused by the negligent acts or omissions of municipal employees. *See* M.G.L. c. §§ 1, 2. Municipal employees are not individually liable for negligence. Section 2 of the MTCA states that the "[p]ublic employer shall be liable for injury or loss of property… caused by the negligent or wrongful act or omission of any public employee while acting within the scope of… employment…." The act also provides that the public employee is indemnified from liability for all negligent acts occurring within the scope of employment. *See Taplan v. Town of Chatham*, 390 Mass. 1, 2-3 (1983) ("Under the Massachusetts Tort Claims Act a public employee is not liable for personal

injury or death caused by his negligent or wrongful act or omission while acting within the scope of his office or employment") (citations omitted) (quotations omitted); *Sadlowski v. Benoit*, No. 9801859, 2008 WL 2745157, at *7 (Mass. Super. June 26, 2008), aff'd, 75 Mass. App. Ct. 1114 (2009) ("As Chapter 258 is the sole remedy for public employees' negligence, [the individual employee] cannot be held personally liable") (alteration to original); *Stull v. Town of Weymouth*, No. CIV.A. 11-11549-JLT, 2013 WL 5592605, at *5 (D. Mass. Oct. 9, 2013) ("the Massachusetts Torts Claims Act immunizes public employees from personal liability for negligence while acting within the scope of their employment").

Plaintiff alleges that Defendant Danilecki was acting as an employee of the City of Boston. *See* Complaint generally. Pursuant to the MTCA, Defendant Danilecki cannot be held personally liable for any alleged negligent conduct while in the scope of his employment with the City of Boston. *See* M.G.L. c. 258 §§1, 2.[26] Therefore, any negligence claim must be dismissed.

### C. Plaintiff's claims against Defendant Danilecki should be dismissed as they do not plead sufficient facts to meet the *Twombly* standard

As described below, Plaintiff has failed plead factual allegations that are sufficient to support the reasonable inference that Defendant Danilecki is liable. *Saldivar v. Racine*, 818 F.3d 14, 18 (1st Cir. 2016).[27]

---

[26] Because Defendant Danilecki is immune from suit for negligent actions, it is not addressed that there are no facts alleged that Danilecki took any negligent actions. However, it is the case that even if Defendant Danilecki were not immune there have been no factual allegations made to support a claim of negligence.
[27] Defendant does not repeat the argument for Claim 4, as this must be dismissed for the reasons stated above.

1. **Claim 6: False Imprisonment (state)**

Plaintiff has not pled sufficient facts to succeed on a claim of common law false imprisonment. To prevail on his false imprisonment claim, Plaintiff must prove that he was intentionally and unlawfully confined, either directly or indirectly, and that he was harmed by such confinement. *See Jonielunas v. City of Worcester Police Dep't*, 338 F. Supp. 2d 173, 177. Where a police officer has probable cause to arrest an individual, there is legal justification for the confinement, and no cause of action for false imprisonment under Massachusetts law. *See Sietins v. Joseph*, 238 F. Supp. 2d 366, 381 (D. Mass. 2003). In support of his claim of false imprisonment against Defendant Danilecki, Plaintiff states: "In furtherance of the imprisonment, DEFENDANT DANILECKI began shouting to journalists and members of the crowd to "Move back or we will deploy mace." *See* ECF 29, ¶ 22. Defendant Danilecki was in no way involved in Plaintiff's actual confinement – even assuming all facts in Plaintiff's pleadings are true. When confronting a crowd of protesters blocking traffic, Defendant Danilecki warned them to stand back to avoid deploying tear gas. At no point does Plaintiff allege that any of Defendant Danilecki's actions were directed toward Plaintiff in any way that is not purely speculative. These facts cannot support a claim for false imprisonment and it must be dismissed.

2. **Claim 9: 42 U.S.C. § 1983 (First Amendment, generally)**

Plaintiff broadly and generically claims that his First Amendment free speech protections were infringed upon by the actions taken by Defendant Danilecki.[28] "[T]ypically, in order to show that a deprivation of a First Amendment right has occurred, a plaintiff must, at a minimum, demonstrate that the defendant intended to inhibit speech protected by the First Amendment…,

---

[28] Plaintiff's claim of retaliation is being interpreted as a separate First Amendment claim.

and that the defendant's conduct had a chilling effect on the protected speech that was more than merely "speculative, indirect, or too remote." *MacFarlane v. Kenison*, No. CIV. 98-353-M, 1999 WL 813956, at *4 (D.N.H. Aug. 31, 1999) (citing *Tatro v. Kervin*, 41 F.3d 9, 18 (1st Cir.1994); *Sullivan v. Carrick*, 888 F.2d 1, 4, (1st Cir.1989)). Here, Plaintiff claims to have been documenting other individuals protesting and, shortly before being arrested, "using his megaphone [to ask] BPD if they had given a dispersal order." Complaint, ¶ 24 (internal quotations omitted). There are no facts alleged that could support an inference that Defendant Danilecki acted to inhibit Plaintiff's speech – or possessed or acted based on an opinion on the content of Plaintiff's speech – even if it were protected by the First Amendment. The facts alleged only demonstrate that Defendant Danilecki – in line with his duties as a police officer – told people *other than Plaintiff* to stand back to avoid the deployment of tear gas. There is nothing alleged in Plaintiff's Complaint that Defendant Danilecki intended to inhibit speech of any kind, never mind Plaintiff's speech. This claim must be dismissed as it lacks any factual foundation.

### 3. Claim 12: 42 U.S.C. § 1983 (Negligent Supervision)

Plaintiff claims that Defendant Danilecki is liable under § 1983 for negligent supervision. "A supervisor may be liable under Section 1983 if (1) the behavior of his subordinates results in a constitutional violation, and (2) the supervisor's action or inaction was affirmatively linked to that behavior in the sense that it could be characterized as supervisory encouragement, condonation or acquiescence or gross negligence amounting to deliberate indifference. *Saldivar v. Racine*, 818 F.3d 14 (1st Cir. 2016) (quoting *Pineda v. Toomey*, 533 F.3d 50, 54 (1st Cir.2008) (internal quotations omitted). As a basis for this claim, Plaintiff states that "DANILECKI… violated Plaintiff's civil rights when [he] unreasonably and maliciously and violently assaulted

and battered the Plaintiff." *See* ECF 29, ¶ 44. Not only is this not a basis for a negligent supervision claim, it runs entirely contrary to Plaintiff's statement of facts that allege Danilecki was not involved in the "assault." There is no factual basis to support this claim against Defendant Danilecki and, therefore, it must be dismissed.

### 4. Claim 13: 42. U.S.C. § 1983 (Malicious Abuse of Process)

This appears to be a state law tort claim for abuse of process. Even if pled as such, a state claim for abuse of process is insufficiently pled. Plaintiff does not even attempt to make allegations specific to Defendant Danilecki, but rather states that "POLICE DEFENDANTS violated Plaintiff's civil rights by engaging in a malicious abuse-of-process…." *See* ECF 29, ¶ 47. An abuse of process claim under Massachusetts law requires Plaintiff to prove by a preponderance of the evidence that the defendant (i) used legal process; (ii) for an ulterior or illegitimate purpose; and (iii) it caused damage to the Plaintiff. *Psy-Ed Corp. v. Klein, 459 Mass. 697, 713 (2011); Millennium Equity Holdings, LLC v. Mahlowitz*, 456 Mass. 627, 636 (2010). The plaintiff must show that the process was used to accomplish some ulterior purpose for which the process was not designed or intended, or that was not a legitimate purpose for the particular process employed. *Id*. Taking everything in Plaintiff's Complaint, more definite statement, and proposed amended complaint as true, there are no facts alleged that Danilecki had any involvement in Plaintiff's arrest or prosecution. He is not alleged to have participated in Plaintiff's arrest processing, charging decisions, or otherwise using legal process of any type. This claim must be dismissed.

### 5. Claim 14: 42 U.S.C. § 1983 (False Imprisonment) / Claim 15: 42 U.S.C. § 1983 (False Arrest)

"[W]hen a complaint asserts distinct claims under § 1983 for false arrest and false imprisonment, it is most appropriate to view the allegations as stating a single claim for violation

9

of [plaintiff's] Fourth Amendment right to be free from an unreasonable seizure." *Fraser v. Massachusetts Bay Transportation Auth.*, 544 F. Supp. 3d 148, 156 (D. Mass. 2021) (quoting *Peña-Borrero v. Estremeda*, 365 F.3d 7, 13 n.8 (1st Cir. 2004)). Therefore, claims 14 and 15 are considered together. To state a claim under § 1983, Plaintiff must "allege that the officers lacked probable cause to believe that plaintiff committed a crime." Here, Plaintiff does not allege that Captain Danilecki was involved in Plaintiff's arrest, but rather he told others in the crowd to back up to avoid the deployment of tear gas. There is no factual basis to tie these actions to Plaintiff's arrest. These facts do not support a claim of false imprisonment against Danilecki and must be dismissed.

### 6. Claim 17: 42 U.S.C. § 1983 (Failure to Intervene)

Plaintiff's failure to intervene claim fails because he has not alleged that Defendant Danilecki failed "to take reasonable steps to protect the victim of another officer's use of excessive force." *Igartua v. Toledo*, No. 09–1923, 2011 WL 147926, at *5–6 (D.P.R. Jan. 18, 2011) (quoting *Gaudreault v. Municipality of Salem, Mass.*, 923 F.2d 203, 207 n. 3 (1st Cir.1990)). Here, the only force alleged to have been used was by Officer Harrington in that Officer Harrington took Plaintiff to the ground and "manhandled" Plaintiff. This is not, on its face, excessive force such that another officer would have a duty to intervene. What's more is that, based on Plaintiff's alleged facts, Captain Danilecki was involved in telling the crowd to back up to avoid the deployment of tear gas at the time of Plaintiff's arrest. This does not demonstrate that Danilecki had a reasonable opportunity to intervene even if intervention was called for. These facts do not support a claim of failure to intervene against Defendant Danilecki.

### D. Plaintiff's claims against Defendant Danilecki should be dismissed because Defendant Danilecki is entitled to qualified immunity

Plaintiff's claims against Defendant Danilecki should be dismissed because Defendant Danilecki is entitled to qualified immunity for Plaintiff's § 1983 claims and state tort claims based on the facts pled in Plaintiff's Complaint and more definite statement.  A police officer is entitled to qualified immunity unless he 1) violated a plaintiff's constitutional rights; and 2) those rights were so clearly established that a reasonable officer should have known that they applied to the facts at hand.  *See Belsito Commc'ns, Inc. v. Decker*, 845 F.3d 13, 23 (1st Cir. 2016) (citing inter alia *City & Cty. of S.F. v. Sheehan*, 135 S. Ct. 1765, 1774 (2015)). The "clearly established" test has two elements:  (a) "whether the contours of the relevant right were clear enough to signal to a reasonable official that his conduct would infringe that right," and (b) "whether a reasonable defendant would have understood that his conduct violated the plaintiff[s'] constitutional rights." *MacDonald v. Town of Eastham*, 745 F.3d 8, 12 (1st Cir. 2014). Importantly, the U.S. Supreme Court held that the second part of this test is not met unless "existing precedent . . . placed the statutory or constitutional question beyond debate." *Sheehan*, 135 S. Ct. at 1774 (emphasis supplied) (quoting Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2083 (2011)).  In other words, existing precedent "must be clear enough that every reasonable official would interpret it to bar the conduct at issue." *Hill v. Walsh*, 884 F.3d 16, 21 (1st Cir. 2018) (emphasis in original) (quoting *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018)).

This is a "demanding standard" which "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Wesby*, 138 S. Ct. at 589; *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)).  "The immunity afforded by this doctrine is particularly important for police officers in order not to 'unduly inhibit the assiduous

discharge of their dut[y]' to protect the community at large." *Conlogue v. Hamilton*, 906 F.3d 150, 154 (1st Cir. 2018)  (citing *Savard v. Rhode Island*, 338 F.3d 23, 26 (1st Cir. 2003)).  The facts alleged in the Complaint – that Defendant Danilecki told a crowd of protesters to move back to avoid the need to deploy tear gas – are not actions that would be clearly understood to violate Plaintiff's constitutional rights. What's more, they are not even actions that were directed at Plaintiff. Therefore, he is entitled to qualified immunity on Plaintiff's federal claims. *See id*.

Defendant Danilecki is also entitled to qualified immunity for Plaintiff's state law tort claims.  "Massachusetts decisions are uniform in holding that, once immunity has been invoked, the burden of overcoming the immunity rests exclusively with the plaintiff." *See Maxwell v. AIG Domestic Claims, Inc.*, 460 Mass. 91, 104 (2011). Like Plaintiff's constitutional claims, Defendant Danilecki is entitled to qualified immunity for the state law claims because he would not have reasonably understood his conduct to violate Plaintiff's rights. *See Duarte v. Healy*, 405 Mass. 43, 46 (1989) (applying the federal qualified immunity standard to claims under Massachusetts Civil Rights Act). Therefore, in addition to the reasons stated above, all of Plaintiff's claims should be dismissed because Defendant Danilecki is entitled to qualified immunity.

## IV.     CONCLUSION

WHEREFORE, for the reasons set forth above, the Defendant John Danilecki respectfully requests that all claims alleged against him in the Plaintiff's Complaint and more definite statement[29] be dismissed with prejudice.

---

[29] The arguments made herein apply identically to the Plaintiff's proposed Amended Complaint.

          Respectfully submitted,

          JOHN DANILECKI

          By his attorney,

          Adam N Cederbaum,
          Corporation Counsel


          */s/ Sarah J. McAteer*
          Sarah J. McAteer, BBO #706403
          Assistant Corporation Counsel
          City of Boston Law Department
          Room 615, City Hall
          Boston, MA 02201
          (617) 635 – 4048
          Sarah.McAteer@Boston.Gov

Dated: April 6, 2023


## CERTIFICATION PURSUANT TO LOCAL RULE 7.1(A)(2)

  I hereby certify that I conferred with Plaintiff via email at Plaintiff's request regarding the content of this motion on April 3, 2023 and, despite this conferral, filing this motion is still necessary to resolve the issues raised herein.

          */s/ Sarah J. McAteer*
          Sarah J. McAteer, BBO #706403

Dated: April 6, 2023

## CERTIFICATE OF SERVICE

  I hereby certify that this document was filed through the ECF system and will therefore be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those participants as indicated as non-registered participants.

          */s/ Sarah J. McAteer*

Dated: April 6, 2023